**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**C.J.H.,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0405** (BOR Appeal No. 2054892)
                        (Claim No. 2020002940)

**RENT-A-CENTER, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner C.J.H.,[1] by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Rent-A-Center, Inc., by Counsel Jane Ann Pancake and Jeffrey B. Brannon, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on August 23, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its December 2, 2019, Order. The Order was affirmed by the Board of Review on May 21, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions . . . .

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

C.J.H., an assistant manager, alleges a low back injury after lifting heavy furniture and appliances at work on August 6, 2019. He sought treatment that day at Appalachian Regional Hospital Emergency Department and reported back pain after lifting a bedroom suite and delivering a washer and dryer that day at work. It was noted that he had a history of bulging discs. A thoracic CT scan showed minimal scoliosis and endplate spurring in the lower thoracic spine. A lumbar CT scan showed no fractures, spondylolisthesis, or central canal stenosis. A cervical MRI was normal. It was noted that C.J.H. left the Emergency Department against medical advice and that he expressed anger and frustration with his boss. C.J.H. was diagnosed with back pain, neck pain, muscle strain, suicidal thoughts, and homicidal thoughts, which resulted in the police being called and notified of C.J.H.'s threats against his boss.

The Employees' and Physicians' Report of Injury, completed the day of the alleged injury, indicates C.J.H. injured his cervical, thoracic, and lumbar spine when he was "forced to move a bed out of the van alone" and then had to move a washer and dryer alone. The physician's section lists the diagnosis as neck pain and back sprain. The Employers' Report of Injury was also completed that day and indicates C.J.H. alleged an injury while performing his regular job duties, but he was unsure how the injury occurred.

On the morning of August 6, 2019, prior to the alleged injury, Randy Byrd, C.J.H.'s manager had a "Performance Concerns Discussion" with C.J.H. regarding unexcused absences from work. C.J.H. was to work his scheduled days and have no more unexcused absences.

C.J.H. sought treatment from New River Health on August 8, 2019, where he reported that two days prior, he felt mild pain in his lower back while unloading a bedroom suite from a delivery truck. He then delivered a washer and dryer, which each weighed approximately one hundred and fifty pounds. C.J.H. stated that while lifting the dryer, he felt a pop in the middle of his lower back.

2

He immediately experienced severe pain. C.J.H. admitted that he had a prior low back injury and disc bulging. C.J.H. was diagnosed with low back pain and muscle strain and was excused from work for two weeks. On August 22, 2019, C.J.H. returned due to increased back pain. He had also developed pain in his legs and a headache for two weeks. C.J.H. was diagnosed with headache, thoracic pain, and low back pain. An Attending Physician's Report was completed that day by Kimberly Nemati, PA, and indicates C.J.H.'s CT scan results were unremarkable. He was excused from work until at least August 29, 2019.

Prior to the alleged injury at issue, on May 12, 2011, C.J.H. underwent a cervical MRI which showed mild disc bulging at C3-4 and C6-7 but no definite herniations. A thoracic MRI showed minimal, chronic wedge deformities at T8 and T11 and mild disc bulging at several levels. There was no evidence of disc herniations or high-grade stenosis. A lumbar MRI showed mild bulging at L4-5 and L5-S1 but no herniations. The claims administrator rejected the claim on August 23, 2019.

C.J.H. again returned to New River Health on August 29, 2019, for severe lower back pain. Physical examination was unremarkable. C.J.H. was diagnosed with low back pain, referred to physical therapy, and excused from work. On September 5, 2019, C.J.H. returned for neck and mid-back pain. He also reported pain in his buttocks and both thighs. C.J.H. was unable to work. Ms. Nemati completed an Attending Physicians' Report that day indicating C.J.H. had no objective signs of back pain other than a positive straight leg raising test. On September 19, 2019, C.J.H. reported worsening back spasms and pain. C.J.H. appeared to be in pain, but it was noted that there were no objective findings to support his symptoms. Ms. Nemati stated that she needed a statement from the employer regarding whether it could provide light duty because she was "having a hard time keeping him off work due to nothing really objective on exam to support his pain." C.J.H. was diagnosed with thoracic, cervical, and lumbar pain. C.J.H. returned on October 3, 2019, and reported that he was "getting used to" his back pain. Ms. Nemati noted that C.J.H.'s workers' compensation case was closed due to the fact that he failed to disclose his prior back issues. It was also noted that a 2011 MRI was reviewed and showed a mild disc bulge with no herniation or stenosis. C.J.H. was released to return to light duty work. In an October 3, 2019, letter, Ms. Nemati stated that she referred C.J.H. to physical therapy for back and neck pain. She noted that he had an abnormal exam on his last visit and recommended light duty work.

In a letter dated October 24, 2019, John Fields, C.J.H.'s coworker, stated that he was told C.J.H. was injured lifting a bedroom suite. Mr. Fields stated that he was off of work that day. He stated that C.J.H. appeared healthy before the injury and had no problem performing his job duties. After the injury, C.J.H. could not even walk normally. Corey Lawson, C.J.H.'s coworker, stated in a letter that on the day of C.J.H.'s injury, C.J.H. was instructed to move a bedroom suite into a customer's truck. C.J.H. had to load the suite alone because Mr. Lawson was on light duty. Mr. Lawson stated that he heard C.J.H. yell while he was unloading the suite. Mr. Lawson checked on C.J.H., and C.J.H. stated that he hurt his back. C.J.H. sat down for a while, and Mr. Lawson left the store.

Mr. Byrd completed an affidavit on November 6, 2019, stating that he was the manager on duty on the day of the alleged injury. Mr. Byrd stated that prior to the injury, C.J.H. was counseled

3

regarding his attendance issues. Mr. Byrd said that three months prior to the alleged injury, a meeting was held with C.J.H. and Mr. Lawson regarding performance issues. Following the meeting, C.J.H.'s performance continued to decline. Specifically, multiple complaints were made regarding missed delivery times. On the day of the alleged injury, Mr. Byrd told C.J.H. to wait to move the bedroom suite so he could help C.J.H. When Mr. Byrd returned to help C.J.H., the suite was already loaded. C.J.H. did not mention an injury. C.J.H. then delivered a washer and dryer. When he returned, he complained of back pain. Mr. Byrd stated that Mr. Fields no longer works at the same location as Mr. Lawson and C.J.H. because the three of them created a toxic work environment.

Wayne Lucas, district manager, stated in an affidavit that he received text messages from C.J.H. and Mr. Fields on May 3, 2019, stating that they would not be at work the following day. Mr. Lucas contacted both men and told them they had to report to work on May 4, 2019. Mr. Lucas had a meeting with C.J.H. and Mr. Fields regarding problems at the store and issues with work environment. Mr. Fields was transferred to a different store.

In a hearing before the Office of Judges on November 7, 2019, C.J.H. testified that on the day of his injury, he was forced to unload a van by himself. In the course of doing so, he injured his back. He reported the injury to his boss and was told to continue working. C.J.H. then delivered a washer and dryer and felt a pop in his back followed by severe pain. C.J.H. testified that he reported the injury to Mr. Byrd and was told he had to complete his shift. C.J.H. denied any prior low back injuries. He stated that the 2011 MRIs were taken due to severe kidney stones. The spine findings were incidental and did not affect C.J.H. prior to the injury at issue. C.J.H. asserted that Mr. Byrd called the May 4, 2019, meeting for retaliation. He further asserted that Mr. Byrd violated store policy by requiring employees to make deliveries alone. On the day of his injury, C.J.H. alleges that Mr. Byrd made him move the washer and dryer because Mr. Byrd was angry with C.J.H. C.J.H. testified that Mr. Byrd did not offer to help unload the bedroom suite. C.J.H. stated that he had made complaints about Mr. Byrd in the past. C.J.H. denied missing any deliveries but admitted that he was disciplined for unexcused absences.

The Office of Judges affirmed the claims administrator's rejection of the claim in its December 2, 2019, Order. The employer argued that there were no witnesses to the alleged injury, C.J.H. had a personal dispute with the employer on the day of the alleged injury, C.J.H. reported inconsistent symptoms after the alleged injury, and C.J.H. had a prior low back injury and symptoms. Regarding Mr. Fields's statement, he admitted that he was not at work on the day of the alleged injury. Mr. Lawson stated that he heard C.J.H. yell but did not actually see the injury. Mr. Lawson stated that C.J.H. said that he injured his back and that he appeared to be in pain. C.J.H. testified that he was forced to unload a bedroom suite by himself and that he injured his back in the process. He stated that he reported the injury to his boss and was told to deliver a washer and dryer and then rest. The Office of Judges concluded that the statements all indicate C.J.H. was injured while lifting a bedroom suite. However, two days after the injury allegedly occurred, C.J.H. reported to Ms. Nemati, his treatment provider, that he initially felt mild pain in his lower back while lifting a bedroom suite. C.J.H. further reported that while lifting a washer and dryer, he felt a pop in his midback followed by pain.

4

The Office of Judge determined that C.J.H.'s symptoms were inconsistent throughout the record. He was noted as having an abnormal, painful gait at one appointment and had a completely normal gait at the next on August 29, 2019. On September 5, 2019, C.J.H. again had an abnormal, painful gait. When C.J.H. was initially treated at Appalachian Regional Hospital, he reported pain throughout his spine but denied lower extremity symptoms. Two days later, he returned and reported lower back and neck pain. On August 22, 2019, C.J.H.'s symptoms were reportedly much worse, and he had shooting pain in his legs as well as headaches. On August 29, 2019, C.J.H. only reported back pain. On September 5, 2019, C.J.H. reported only neck and midback pain. Finally, Ms. Nemati stated that C.J.H. had no objective evidence of pain other than positive straight leg raise.

The Office of Judges found that even though C.J.H. denied any prior back injuries, a May 12, 2011, MRI indicates otherwise. It was noted on the MRI that C.J.H. reported cervical, thoracic, and lumbar pain as well as paresthesia in the arms and legs. C.J.H. testified that the MRI was performed due to kidney stones. Further, it was noted on August 8, 2019, that C.J.H. had a prior back injury and disc bulges. Also, Ms. Nemati stated on October 3, 2019, that C.J.H. had a prior low back injury with disc bulges.

The Office of Judges took note of the fact that that C.J.H. had ongoing personal conflicts with management. When he was initially treated for the alleged injury at Appalachian Regional Hospital, C.J.H. made threats against Mr. Byrd resulting in the police being called. Further, C.J.H. was disciplined by the employer prior to and on the date of the alleged injury. The Office of Judges concluded that the claim contains significant inconsistencies, C.J.H. denied a prior back injury even though evidence shows he had one, and the alleged injury was not witnessed. Therefore, the rejection of the claim was affirmed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 21, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The evidence fails to show that C.J.H. sustained an injury in the course of his employment. His symptoms are inconsistent throughout the record, the injury was not witnessed, C.J.H. had personal conflicts with management, and there is no objective medical evidence to support C.J.H.'s alleged symptoms.

Affirmed.

**ISSUED:** October 4, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton